2026 IL App (1st) 250809-U

No. 1-25-0809

Order filed August 3, 2026

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 5102 |
| | ) | |
| CARLOS HERNANDEZ-GARCIA, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's aggregate 54-year sentence for aggravated criminal sexual assault and aggravated criminal sexual abuse is affirmed over his contentions that (1) his sentence is excessive and the trial court imposed a "trial tax," and (2) he was denied effective assistance of counsel.

¶ 2    Following a jury trial, defendant Carlos Hernandez-Garcia was found guilty of one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 2010)) and two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(a)(1) (West 2010)). He was sentenced to a

total of 54 years in prison. On appeal, defendant contends that his sentence is excessive given the evidence in mitigation and argues that the trial court penalized him for electing a jury trial. In the alternative, he contends that he was denied effective assistance when trial counsel failed to include the latter issue in the postsentencing motion. We affirm.

¶ 3     Defendant was charged by indictment with two counts of aggravated criminal sexual assault, four counts of aggravated criminal sexual abuse, and one count of aggravated battery following an incident on June 21, 2010.

¶ 4     On October 19, 2011, defendant requested a conference pursuant to Supreme Court Rule 402 (eff. July 1, 2012), and confirmed that he wanted the trial court to participate. When the case was recalled later that day, the State spread of record that defendant rejected a plea offer.

¶ 5     On February 22, 2012, defendant did not appear and the State requested a bond forfeiture warrant, which the trial court granted. Defendant next appeared in court on December 7, 2023.

¶ 6     On February 22, 2024, the State announced that it offered defendant a plea bargain and the case was continued. At the next court date, the State explained that the offer was "on the top charge" and that a second case would be nol-prossed as part of the agreement. Trial counsel stated that defendant wanted a jury trial, and the State revoked the plea offer.

¶ 7     On April 4, 2024, trial counsel stated that the State made a "lower" plea offer. The State explained that it offered 14 years' imprisonment on count I for aggravated criminal sexual assault. The State noted that, as charged, count II for aggravated criminal sexual assault carried a 10-year sentencing enhancement due to defendant's alleged use of a weapon.

¶ 8     The trial court asked whether, as part of the plea offer, the State would not proceed on the "weapons charge." The State answered yes. The court then asked whether the two counts for

aggravated criminal sexual assault would otherwise be subject to consecutive sentencing, and trial counsel affirmed. The State added that consecutive sentences on the criminal sexual abuse charges were discretionary. The court told defendant that if he accepted the State's offer, "the remaining counts would be dismissed." Defendant stated that he understood the offer, but declined it.

¶ 9    The court then admonished defendant that, in the instant case, he was charged with two counts of aggravated criminal sexual assault, with sentencing ranges of 6 to 30 years' imprisonment, and that probation was not available. Were defendant convicted of both counts, the sentences would be consecutive. Moreover, because count II involved a weapon, it carried a 10-year sentencing enhancement. The court further noted that, in pending case number 12 CR 08407, defendant had been charged with the Class 1 offense of violation of bail bond, punishable by 4 to 15 years' imprisonment, and a sentence in that case would be consecutive to the sentence imposed in the instant case. Therefore, according to the court, "the maximum sentence just for these three counts *** would be 75 years." (In relating the maximum sentence, the trial court apparently did not include the 10-year weapon enhancement on count II.)

¶ 10    The court asked whether defendant understood, and he answered yes. The court then reiterated that the State had offered 14 years and would not proceed on the count with the sentencing enhancement as part of the plea agreement. Defendant stated that he understood, had discussed the offer with counsel, and rejected the offer. The court asked whether defendant understood that if he were convicted and received a higher sentence, he "would be in no position to come back and say" that he wanted the offer, which would be "off the table." Defendant indicated that he understood. The court finally stated that if defendant were "convicted of all three

of these counts" the court could impose a sentence "between 26 years and 75 years in the penitentiary." Defendant stated that he understood.

¶ 11    On March 5, 2025, the State explained that it "offered 12 years" on count I, but that the offer had been revoked. The trial court again admonished defendant as to the charges and the sentencing ranges, reiterated that the State offered a 12-year sentence on count I, and asked if trial counsel related the offer to defendant. Defendant answered yes and stated that he rejected the offer. The court admonished defendant that if he were convicted, the court was not "bound by that offer." Defendant reiterated that he would not take the offer.

¶ 12    The matter proceeded to a jury trial on count II for aggravated criminal sexual assault, and on counts III and IV for aggravated criminal sexual abuse.

¶ 13    Z.Y. testified through a Mandarin interpreter that in June 2010, she worked as a cashier at "Pik N Go." On June 20, 2010, she worked alone and was to close the store at 1 a.m. When Z.Y. tried to close the store, defendant, whom she identified in court, pushed the door open and grabbed her. She had previously seen defendant in the store, but did not know his name. Defendant pushed Z.Y. into a storage room and she fell to the ground. Defendant "tore off" Z.Y.'s clothes and "ripped" off her underwear. Defendant next pushed her bra up and kissed and grabbed Z.Y.'s breasts. She tried to push defendant with her hands and legs. At this point, defendant's underwear and pants were below his knees. Defendant tried to "shove" his penis into Z.Y.'s vagina by "poking and rubbing" her vulva. After defendant could not "get his penis in," he smashed a beer bottle over Z.Y.'s head. Z.Y. then grabbed a beer bottle and hit defendant. There was a sound and defendant left. Z.Y. called 911. Police arrived and she was taken to a hospital. Her injuries included glass chips in her head and lacerations to her forehead and elbow. Hospital staff swabbed her left breast.

¶ 14    The State presented defendant's written statement, given on March 8, 2011, to Schaumburg police officers and an assistant State's Attorney. Defendant stated, relevant here, that one night in June 2010, he had been drinking beer and using cocaine. Around 1 a.m., he went to a store for more beer. There, defendant grabbed the cashier and pushed her to the back of the store. He became angry when she struggled. Defendant then pushed the woman to the ground of the beer storage room and "ripped" her shirt open. Defendant grabbed her breasts, held her down with his legs, and pulled his pants down. He also pulled the woman's "pants or skirt down." Defendant pushed his penis against the woman's vagina. After a few attempts to insert his penis, which was "soft from the beer," he stopped because "it would not go in." The cashier hit defendant with a bottle of beer. Defendant grabbed the bottle and hit the cashier over the head, breaking the bottle. Defendant then gathered his clothes and went home. The next morning, he felt bad and left the area.

¶ 15    The State presented additional evidence establishing that DNA swabs were taken from defendant and Z.Y., and that the swabs of Z.Y.'s breasts contained a male DNA profile for which defendant was a potential donor.

¶ 16    The State entered a stipulation that defendant, while on bond, failed to appear in court on February 22, 2012. A warrant was issued for his arrest, which occurred on November 6, 2023.

¶ 17    The jury found defendant guilty of each count.

¶ 18    Defendant filed a motion and amended motion for a new trial, which were denied.

¶ 19    Defendant's presentence investigation report (PSI) stated that he had pending cases for violation of bail bond and "Obstruction Justice/Destroy Evidence," and had a 2011 conviction for driving under the influence (DUI). (Although, during sentencing, the State referred to this conviction as a 2005 DUI conviction, the PSI reflected that defendant was arrested in 2005 and

the case was disposed of in 2011.) The PSI also stated that defendant was arrested for DUI on July 24, 2009, and that "no disposition is *** reflected in Odyssey or Leads."

¶ 20    Defendant stated that he was raised in Mexico and had an " 'average and happy' " childhood. He had good relationships with his father and siblings. Defendant completed the sixth grade and then worked to support his family. In 2004, defendant came to America. He had been employed at a lawncare company for more than 10 years. He described his current health as " 'good,' " but he previously had problems with alcohol and "crack cocaine." In 2010, he used "crack" every day.

¶ 21    At sentencing, the State presented Z.Y.'s victim impact statement. Z.Y. stated that because of this "sexual assault," her life "completely changed" and she could not "get rid of the psychological and physical trauma." She suffered from, *inter alia*, insomnia, fear of living alone and "even going out," losing trust in people, and "stress disorder syndrome." She had seen doctors and took medication. This incident "completely changed" her perception of human nature and her "healthy life." Z.Y. gave up her educational and career plans, and spent her time "healing."

¶ 22    The State argued that Z.Y. felt lasting pain and physical trauma and did not "deserve" to live with "fear of the world." The State contended that defendant, who did not care "about the rule of law," attacked a "woman working alone," and that the trial court must "protect society" from him. Further, defendant fled, rather than taking responsibility for his actions. Turning to the PSI, the State noted that defendant made no comment about the case, did not display remorse, and had a "average, happy childhood." That is, "no trauma" caused defendant's "violent behavior."

¶ 23    The State related that on July 24, 2009, the victim in another case reported to police that she went to a friend's house to consume drugs. There, the friend and defendant raped the victim at knifepoint. The victim reported the incident immediately, but became fearful and did not proceed.

¶ 24    The State also noted that defendant had pending cases for violation of bail bond and obstruction of justice. In the latter case, defendant was arrested on November 4, 2023. Defendant was a passenger in a vehicle reported stolen, possessed "meth," and gave false identifying information. When defendant was later fingerprinted, officers learned of the warrant in the case at bar. The State finally noted that defendant had a 2005 DUI conviction and a 2009 DUI case without a disposition.

¶ 25    Trial counsel argued that, while it was "no excuse," defendant was "completely out of his mind" due to alcohol and drugs during the offenses. According to counsel, defendant admitted abusing "crack cocaine" and alcohol, and that he drank "several to 20 beers" on the night of the offenses. Counsel noted defendant's limited criminal background and that he was a "hard-working individual." Counsel argued that the fact that defendant respected "the law for the 10 years he was missing" contradicted the State's characterization of defendant as a "violent criminal."

¶ 26    The court asked whether trial counsel was proffering "anything" as to where defendant was for the past 10 years. Counsel answered that the PSI indicated that defendant lived in West Chicago, and no evidence showed that he was in Mexico.

¶ 27    Counsel acknowledged that, considering the evidence in this case, counsel tried to persuade defendant to "take an offer," but asked the court to be "mindful" that defendant had the right to trial. Counsel requested a sentence closer to the "minimum range," which still was "substantial."

¶ 28    In allocution, defendant requested "the least time possible" because he regretted what happened. During the offense, defendant was "lost in drugs and alcohol" and did not know what he was doing. Defendant asserted that he always worked and wanted to help his family.

¶ 29    The trial court stated that it considered the nature and circumstances of the offense, defendant's history, the PSI, the arguments in aggravation and mitigation, the victim's statement, and defendant's allocution. The court declined to consider the 2009 DUI arrest and the uncharged case.

¶ 30    In "carefully" considering the statutory factors in aggravation and mitigation, the court found it "evident," based upon Z.Y.'s manner when testifying, that she "suffered greatly." The court found the offenses to be "egregious," but would not "independently" consider whether defendant's conduct caused or threatened serious harm because that factor was inherent in the offenses. The court stated that it would, however, consider whether the sentences would be necessary to deter others from committing the same crimes.

¶ 31    Turning to the statutory factors in mitigation, the court noted that defendant caused serious physical harm and could not have contemplated that his conduct would not do so. Defendant did not act under strong provocation and, although the court was "sympathetic" to his addiction, drugs or alcohol provided "no excuse." No one induced defendant or facilitated his conduct, and no restitution was made. As to defendant's criminal history, the court noted a DUI, that defendant did not appear after his release on bond, and that, according to the State, defendant gave false identifying information when arrested in 2023. The court stated that it could not conclude that defendant's criminal conduct resulted from circumstances unlikely to recur.

¶ 32    The court declined to find that defendant's character indicated that he was unlikely to commit another offense, noting the pending violation of bail bond case and that defendant gave a false name when arrested in 2023. The court found no evidence that defendant had a medical condition that would endanger him in prison, and that "none of the other more nuanced statutory factors in mitigation apply."

¶ 33    The court concluded that if "ever a case called for the maximum sentence, this case is it." On count II for aggravated criminal sexual assault, the court imposed 30 years' imprisonment plus a 10-year sentencing enhancement for the use of a weapon. The court then imposed a consecutive seven-year sentence on count III for aggravated criminal sexual abuse.

¶ 34    The trial court further noted that a consecutive sentence for count IV for aggravated criminal sexual abuse was warranted, as defendant committed a violent sexual offense involving a weapon and the victim was "still scared out of her mind and traumatized." The court characterized these offenses as "horrendous" and unprovoked. While defendant was "probably *** under the influence of something," his actions could not be excused by age, immaturity, alcohol, or drugs. As to defendant's history and character, he fled in 2012 and was not apprehended until 2023, which deprived the victim of "closure" and obstructed justice. The court found it "apparent" that a consecutive sentence was necessary to protect the public and imposed a consecutive seven-year sentence on count IV, for a total of 54 years' imprisonment.

¶ 35    Defendant filed a motion to reconsider sentence. In denying the motion, the court noted that the statutory maximum sentence was warranted as defendant committed a "vicious unprovoked attack," resulting in "one of the most aggravated cases" that the court had seen. The court denied that it considered in aggravation matters that were implicit in the offenses, noting that

it "specifically" stated that it would not consider harm as an independent aggravating factor because it was implicit in the offenses. However, defendant caused "serious long-lasting *** emotional harm" and evaded justice for over a decade. Further, defendant's drug and alcohol use was "certainly" not mitigating and did not excuse his conduct.

¶ 36    On appeal, defendant first challenges his sentence as excessive given the evidence in mitigation.

¶ 37    The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. To achieve that balance, a trial court must consider a number of factors in aggravation and mitigation. *People. v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 20 (citing *People v. Alexander*, 239 Ill. 2d 205, 213 (2010)). The trial court's decisions are entitled to "great deference" because it is better positioned to consider factors such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212-13; see also *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 38    While the trial court must consider the factors in aggravation and mitigation, the court need not recite each factor and the weight afforded it. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigating evidence presented. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67.

¶ 39    Here, defendant was found guilty of one count of aggravated criminal sexual assault, a Class X felony, which, as charged, carried a 10-year sentencing enhancement based upon the use

of a weapon. See 720 ILCS 5/12-14(a)(1), (d)(1) (West 2010). Defendant was also found guilty of two counts of aggravated criminal sexual abuse, a Class 2 felony. See 720 ILCS 5/12-16(a)(1), (g) (West 2010). The sentencing range for a Class X felony is 6 to 30 years in prison and the sentencing range for a Class 2 felony is 3 to 7 years in prison. See 730 ILCS 5/5-4.5-25(a) (West 2010); 730 ILCS 5/5-4.5-35(a) (West 2010).

¶ 40    When imposing sentence, the trial court stated that it considered the nature and circumstances of the offense, defendant's history, the PSI, the arguments in aggravation and mitigation, the victim's statement, and defendant's allocution. The court declined to consider the uncharged sexual assault case and the 2009 DUI. After "carefully" considering the statutory factors in aggravation and mitigation and Z.Y.'s testimony, the court found it "evident" that she "suffered greatly" from defendant's actions. The court therefore imposed the statutory maximum sentence of 40 years' imprisonment for aggravated criminal sexual assault and consecutive 7-year sentences for each count of aggravated criminal sexual abuse, resulting in an aggregate sentence of 54 years in prison. Defendant's sentence is within the permissible statutory range and is therefore presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 41    Defendant, however, contends that a "sentence closer to the [statutory] minimum" would be more appropriate given his nonviolent criminal background, remorse, consistent employment, and the State's "low" plea offers. He notes that, in allocution, he expressed regret and attributed his actions to alcohol and drugs.

¶ 42    As discussed, absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigation evidence presented. *Kindle*, 2021 IL App (1st) 190484, ¶ 67. That presumption may be overcome by "affirmative

evidence" that the sentencing court failed to consider factors in mitigation. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. Here, defendant cannot make such a showing.

¶ 43    At sentencing, the trial court discussed each statutory factor in mitigation. See 730 ILCS 5/5-5-3.1 (West 2010). The court found that defendant caused serious physical harm, that he could not have contemplated his conduct would not cause serious physical harm, and that he did not act under a strong provocation. While the court was "sympathetic" to defendant's addiction, "drugs and alcohol" did not excuse his actions. No other grounds excused defendant's conduct, no one induced or facilitated his conduct, and he had not made restitution. Further, defendant had one DUI conviction, did not appear after his release on bond in 2012, and gave false information when arrested in 2023. The court found defendant likely to commit another crime, noting his pending case for obstruction of justice, and that he did not have a medical condition that would endanger him in prison. The court concluded that "none of the other more nuanced statutory factors in mitigation apply." Thus, contrary to defendant's contention, the trial court considered the evidence in mitigation.

¶ 44    While defendant expressed remorse and blamed his actions on drugs and alcohol, substance abuse is not inherently mitigating. *People v. Prather*, 2022 IL App (4th) 210609, ¶ 39. Rather, "evidence of a history of substance abuse is a double-edged sword because this evidence can be viewed as either aggravating or mitigating." *People v. Ward*, 187 Ill. 2d 249, 261 (1999); see also *People v. Mertz*, 218 Ill. 2d 1, 83 (2005) ("Simply because the defendant views his substance abuse history as mitigating does not require the sentencer to do so."). Additionally, the trial court stated that it reviewed the PSI. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a presentence report, it is presumed that the court considered the

defendant's potential for rehabilitation."). While the trial court did not explicitly mention the nonviolent nature of defendant's criminal background, employment, or the State's plea offers, the court was not required to detail all the evidence it considered in aggravation and mitigation or the weight it assigned thereto. *Wilson*, 2016 IL App (1st) 141063, ¶ 11.

¶ 45 Here, the trial court addressed the circumstances of the offenses, which it characterized as "egregious," and concluded that if "ever a case called for the maximum sentence, this case is it." See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 ("the most important sentencing factor is the seriousness of the offense" and a "court is not required to give greater weight to mitigating factors than to the seriousness of the offense"). Ultimately, defendant identifies nothing in the record, other than the sentence, as support for his argument that the trial court did not consider the mitigating evidence. However, mitigating factors neither require the minimum sentence nor prohibit the maximum sentence. *Id.* While a sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship (*People v. Jones*, 2015 IL App (1st) 142597, ¶ 38), the most important factor in sentencing, as noted, involves the seriousness of the offense (*Harmon*, 2015 IL App (1st) 122345, ¶ 123).

¶ 46 Essentially, defendant asks this court to reweigh the statutory factors in mitigation and impose a "sentence closer to the minimum." However, a reviewing court "may not substitute its judgment for that of the trial court merely because it might have weighed those factors differently." *People v. Klein*, 2022 IL App (4th) 200599, ¶ 37; see also *People v. Jones*, 2025 IL App (1st) 230771, ¶ 123 ("a reviewing court must be careful not to substitute its judgment for that of the trial court simply because, based on a cold transcript, the reviewing court is tempted to weigh the factors differently"). Given the record, we cannot say the trial court's imposition of an aggregate sentence

of 54 years' imprisonment was an abuse of discretion. See *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 24 ("The balance to be struck amongst the aggravating and mitigating factors is a matter of judicial discretion that should not be disturbed absent an abuse of discretion.").

¶ 47    Next, defendant contends that the 42-year difference between the State's 12-year pretrial offer and the 54-year sentence imposed following trial constitutes an "impermissible" trial tax. Defendant asks this court to review his unpreserved claim pursuant to the plain error doctrine. In the alternative, defendant contends he was denied effective assistance because trial counsel failed to include this issue in the postsentencing motion.

¶ 48    "[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). Failure to complete either requirement forfeits the issue on appeal. *Id.* We may consider an unpreserved issue under plain error review, which is available where "a clear or obvious error occurred" and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *People v. Chambliss*, 2026 IL 130585, ¶ 61. Absent error, defendant's procedural default will be honored and a claim of ineffective assistance also will fail. See *People v. Spears*, 2024 IL App (1st) 181491, ¶ 212.

¶ 49    While a court may grant concessions to a defendant who pleads guilty, it may not penalize a defendant for rejecting a plea offer and demanding trial. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). However, the mere fact that a defendant received a longer sentence after trial than was offered during plea negotiations does not by itself support an inference that the sentence was

punishment for exercising the right to trial. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. Rather, "it must be 'clearly evident' in the record that the harsher sentence resulted from the trial demand." *Id.* (quoting *Ward*, 113 Ill. 2d at 526). This evidence may be explicit remarks by the trial court that the sentence imposed was punishment for the trial demand or a sentence that is outrageously higher than the plea offer. *Id.* This court reviews the record as a whole, rather than a few words or statements of the trial court. *Id.* We review for an abuse of discretion. *Id.* ¶¶ 21, 28.

¶ 50    Pretrial, the State made defendant offers of 12 and 14 years' imprisonment on count I for aggravated criminal sexual assault without a sentencing enhancement for use of a weapon. As part of the agreement, the State would not proceed on count II for aggravated criminal sexual assault, which carried a sentencing enhancement for use of a weapon, the four counts for aggravated criminal sexual abuse, and the one count of aggravated battery. During pretrial proceedings, the trial court repeatedly admonished defendant of the charges, the sentencing ranges and enhancement, and the possibility of consecutive sentencing. The court confirmed defendant's understanding of the plea offers, including defendant's knowledge that, were he found guilty at trial, the court would not be bound by the State's pretrial offers.

¶ 51    At trial, the State proceeded on count II for aggravated criminal sexual assault, which as charged, carried a 10-year sentencing enhancement based upon the use of a weapon during the offense, and two counts for aggravated criminal sexual abuse, one count of which was subject to a mandatory consecutive sentence and one count of which was subject to a discretionary consecutive sentence. Thus, the sentencing range for the three counts of which defendant was found guilty was between 19 and 54 years' imprisonment.

¶ 52    Defendant characterizes, as warnings, the trial court's statements that he would be subject to longer sentences if found guilty at trial and that the trial court would not be bound by the State's pretrial offers at sentencing. These statements, however, were also factually true.

¶ 53    *People v. Jones-Beard*, 2019 IL App (1st) 162005, is instructive. In that case, the defendant was charged with aggravated vehicular hijacking and armed robbery. *Id*. ¶ 1. During a pretrial Rule 402 conference, the trial court offered seven years' imprisonment in exchange for a guilty plea. *Id*. ¶ 4. The defendant rejected the offer and proceeded to a bench trial, where he was convicted and sentenced to two concurrent terms of 15 years' imprisonment. *Id*. ¶¶ 1, 4, 15.

¶ 54    On appeal, the defendant argued that the sentence constituted a trial tax. *Id*. ¶ 25. We affirmed, noting, as relevant here, that the defendant had offered no evidence other than the sentence itself. *Id*. ¶ 27. We found that a sentence, "which amounts to just over a twofold increase from the pretrial offer, is not so outrageously disproportionate that we are left only to conclude that it was the product of a trial tax." *Id*. The trial court's pretrial offer was best viewed as an acceptable dispositional concession offered in exchange for the defendant's guilty plea. *Id*. ¶ 28. After the defendant rejected the plea and was convicted at trial, the resulting 15-year sentence did not constitute an abuse of discretion. *Id*.; compare *People v. Moore*, 2023 IL App (1st) 211421, ¶ 136 (a sentence three times greater than the State's offer did not, on its own, establish a trial tax) with *People v. Garcia*, 2023 IL App (1st) 172005, ¶ 77 (a sentence 64 years greater than the circuit court's pretrial recommendation, a 177% increase, could only be explained as a trial tax).

¶ 55    While defendant is correct that his aggregate 54-year sentence exceeds the State's offers of 12 and 14 years, he has offered no evidence, other than the sentence itself, showing that it constituted a trial tax. As in *Jones-Beard*, the State's offers of 12 and 14 years' imprisonment are

best viewed as concessions to induce a guilty plea; the resultant 54-year sentence, after trial on counts that would have been nol-prossed as part of the plea offer, is not so "outrageously disproportionate" as to constitute an abuse of discretion. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶¶ 26-28. As defendant has failed to establish error, he cannot establish plain error or ineffective assistance. See *Spears*, 2024 IL App (1st) 181491, ¶ 212.

¶ 56    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 57    Affirmed.